USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/7/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEZIE ODUKA,

                          Plaintiff,

            -against-

DANISHA DAVIS, et al.,

                          Defendants.

25-CV-6875 (PAE) (KHP)

**REPORT AND RECOMMENDATION
ON
MOTIONS TO DISMISS**

**TO: THE HONORABLE PAUL A. ENGELMAYER, United States District Judge
FROM: THE HONORABLE KATHARINE H. PARKER, United States Magistrate Judge.**

Plaintiff Mezie Oduka, proceeding pro se, brings claims against Young Men's Christian Association of Greater New York s/h/a Harlem Y.M.C.A. ("Harlem YMCA"), Elizabeth Margaret Owen ("Owen"), Richard De Jesus ("De Jesus") and Christopher Foster ("Foster") (collectively, "YMCA Defendants"), Common Ground Management Corp. d/b/a Breaking Ground Management ("Breaking Ground"), Niesha Sergeant ("Sergeant"), and Carol Anne Herlihy ("Herlihy") (collectively "Breaking Ground Defendants") under numerous federal, state, and city statutes including: Title II of the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), 42 U.S.C. § 1983, what the Court construes as a claim under either Title II or Title VI of the Civil Rights Act of 1964 ("CRA"), New York Real Property Law ("RPL"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL) alleging injury in connection with housing and  social services.  He seeks $500,000 for "physical/emotional/economic injuries," punitive damages, a restoration of possession of subject premises, and other relief.  Before the Court for report and recommendation are two motions: the YMCA Defendants' motion to dismiss the

1

Amended Complaint under the *Rooker-Feldman* doctrine and Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, and the Breaking Ground Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6).  (ECF Nos. 43, 45)  Plaintiff has not opposed either motion.  For the reasons that follow, I respectfully recommend that both motions be GRANTED.

## BACKGROUND[1]

### 1. The Subject Premises

Plaintiff alleges that he moved into Room 828 at 180 West 135th Street, New York, New York (the "subject premises"), in or about September 2015.  (ECF No. 41 p. 2)  The room was located within the Harlem YMCA as "transitional housing wherein different agencies are contracted to provide homeless individuals with short term housing which may lead to long term placement."  (ECF No. 37 p. 5).  Breaking Ground operated a "Street to Home" program, through which "homeless individuals" were first placed in temporary beds and then transitioned into permanent housing.  (*Id.*)   As part of that program, Breaking Ground had a contract with the Harlem YMCA for twenty short-term beds.  (*Id.*)  Plaintiff was placed at the Harlem YMCA through the "Street to Home" program.  (*Id.*)

### 2. 2017 State Court Lockout Proceeding

In a prior lockout proceeding brought by Plaintiff against the Harlem YMCA in 2017, *Mezie Oduka v. Harlem Y.M.C.A.,* Index No. LT-70367/2017 (NY Civ. Ct. Aug 8, 2017), the parties

---

[1] The facts are drawn primarily from the Amended Complaint (ECF No. 41) the documents incorporated therein by reference, and documents of which the Court may take judicial notice, including filings and orders in related state-court proceedings. The Court accepts as true all factual allegations in the Amended Complaint, drawing all reasonable inferences in Plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

agreed to discontinue the matter in a Stipulation of Settlement wherein Plaintiff "acknowledges that he has been granted a temporary license to occupy the Premises by Breaking Ground and that he possesses no tenancy rights greater than said license." (ECF No. 37 pp. 5-6)

### 3. Plaintiff's Experiences at the Subject Premises

Beginning in December 2016, the Harlem YMCA undertook sprinkler installation work at the subject premises. (ECF No. 41 p. 4) By February 2017, work had begun on the eighth and ninth floors, creating "thick dust" and "asbestos filled air." (*Id.*) Plaintiff alleges that he raised the issue with Richard De Jesus, the floor manager, Latoya Jackson, the director of the subject premises, and with Breaking Ground employees Dinah Anderson and Christopher Tabellario, respectively, and requested temporary placement in a hotel until the work was completed, but nobody followed up with him. (*Id.*)

Plaintiff further alleges that De Jesus repeatedly interfered with his collection of recyclables at the premises. (*Id.*) According to Plaintiff, on August 4, 2016, De Jesus told him that he was required to give De Jesus a portion of his recycling earnings. (*Id.*) Plaintiff alleges that De Jesus repeated that demand on October 7, 2016, and later told Plaintiff, on April 11, 2017, that he could no longer collect recyclables in the building because he had refused to pay dues. (*Id.*) Plaintiff further alleges that De Jesus continued to threaten or harass him about recycling on May 9, 2018, August 2, 2018, and May 3, 2019. (*Id.* at p. 5)

In June 2019 Harlem YMCA removed Plaintiff's air conditioner from his room and failed to replace it. (*Id.* at p. 6) He alleges that this removal exacerbated his asthma symptoms and made it difficult for him to breathe in subject premises. (*Id.*) When Plaintiff was told that the air conditioner would be removed, he says he objected, but a maintenance worker removed it

notwithstanding.  (*Id.*)  Plaintiff alleges that he then complained repeatedly to Ms. Jackson, Ms. Anderson, and Mr. Tabellario between June and August 2019, but no one resolved the issue or followed up with him.  (*Id.*)   Plaintiff further alleges that, in or about March 2024, De Jesus threatened to remove Plaintiff and his belongings from the building if Plaintiff continued asking about the air conditioner.  (*Id.* at p. 7)  Plaintiff then left the premises to seek medical treatment and did not return until October 2024.  (*Id.*)

### 4.  2024 State Court Lockout Proceeding

The contract between Breaking Ground and Harlem YMCA ended on October 31, 2024, and Breaking Ground notified residents, including Plaintiff by email on October 5, 2024, that they would need to transfer to another facility on or before October 31, 2024.  (ECF No. 37 p. 5) Plaintiff acknowledged receipt of the email and did not object to moving out .  (*Id.*)  Instead he stated that "I just want to make sure that I would be able to place my belongings in safe condition."  (*Id.*)  On October 30, 2024, Plaintiff returned to the premises to pack his belongings. (ECF No. 41 p. 2)  A security guard and De Jesus led him to his room and Plaintiff claims De Jesus told him he could not enter.  (*Id.*)  Plaintiff further alleges that Mr. De Jesus told him that he and another individual had entered the room in September 2024 and removed Plaintiff's belongings. (*Id.*)  However, Plaintiff was neither locked out nor prevented from staying in the room.  (ECF No. 37 p. 5)  His items were removed because the condition of the subject premises was cluttered and unclean "in contravention of the Harlem YMCA House Rules and Policies." (ECF No. 37 p. 5)

On October 31, 2024, Plaintiff commenced an illegal-lockout proceeding in New York City Civil Court against Harlem YMCA and Breaking Ground.  On August 8, 2025, the Court dismissed

the proceeding with prejudice.  (ECF No. 37 p. 6)  In doing so, the Court held that Plaintiff was a licensee, not a tenant, and that he failed to show that he was in lawful possession of the premises. The Court further concluded that the facts and applicable law did not permit restoration to possession.  (*Id.*) The Court also noted that Plaintiff had not completed the intake requirements or provided the identification and documentation required for Breaking Ground's "Street to Home" program, which would have aided him in transitioning to long-term housing. (*Id.* at p. 5)

In connection with the lockout proceeding, Plaintiff claims that Elizabeth Margaret Owen, counsel for certain defendants, continued discussing the case while Plaintiff was receiving medical treatment from EMS and after the presiding judge had directed her to stop speaking.  (ECF No. 41 pp. 8-9)  Plaintiff further alleges that Sergeant testified at trial that Tiffany Buchanan was at the Harlem YMCA on October 22, 2024, that the door to Room 828 was open, and that the room had been packed up. (*Id.*)  Plaintiff contends that this testimony conflicted with later communications from Sergeant  (*Id.* at p. 9)  and that Herlihy, counsel for Breaking Ground, admitted to communications with Sergeant.  (*Id.*)

### 5.  Procedural History

Plaintiff commenced this federal action on August 19, 2025.  (ECF No. 1)  He amended his complaint on October 15, 2025  (ECF No. 41) after which Defendants separately moved to dismiss this action on November 12, 2025. (ECF Nos. 43, 45)  On February 11, 2026 this Court granted Plaintiff's first request to extend the deadline for his opposition to the pending motions. (ECF No. 60)  On February 18, 2026 this Court granted Plaintiff a second extension and allowed him to file his opposition by March 4, 2026.  (ECF No. 63)   Again on March 13, 2026, after

5

Plaintiff failed to file his opposition on time, this Court granted Plaintiff's request for an additional extension to file his opposition, allowing him until April 13, 2026 to do so. To date, no opposition has materialized.

**LEGAL STANDARD**

1. **Rule 12(b)(1)**

Rule 12(b)(1) requires dismissal of an action "when the district court lacks the statutory or constitutional power to adjudicate it." *Morgan v. Monello*, No. 22 Civ. 3367 (JHR) (JLC), 2023 WL 4837911, at *4 (S.D.N.Y. July 28, 2023) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 Fed. Appx. 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). When deciding a motion to dismiss under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint… as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* (quoting *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 178 (S.D.N.Y. 2017). "However, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (quoting *Morrison v. Nat'l Austl. Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Makarova*, 201 F.3d at 113; *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 350 (S.D.N.Y. 2019). The Court may also "judicially notice a[n adjudicative] fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction." Fed R. Evid. 201

6

Where a defendant moves to dismiss a complaint under Rule 12(b)(1) in addition to other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Armour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. N.Y.C. Dep't of Hous., Pres. & Dev.*, No. 09 Civ. 6547 (BSJ), 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

### 2. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Determining whether a pleading has stated a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Astra Veda Corp.*, 2023 WL 4702094, at *3 (citing *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)). However, courts are not required to accept legal conclusions as true. *See Twombly*, 550 U.S. at 555. At this stage, a court must generally "limit itself to the fact stated in the complaint." *Astra Veda Corp.*, 2023 WL 4702094, at *4 (quoting *Field Day, LLC v. Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006)).

Courts are also "ordinarily obligated to afford special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). This concept protects the rights of *pro se*

7

litigants who are "likely to forfeit important rights through inadvertence if he is not afforded some degree of protection" due to a lack of "legal training and experience." *Id.*  Given that Plaintiff is proceeding pro se, the Court must "construe [his Amended Complaint] broadly and interpret it to raise the strongest arguments it suggests." *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir.2004) (citation omitted).  Nevertheless, "a pro se litigant [is] bound by the same rules of law, including preclusion law, as those [litigants] represented by counsel." *Fertig v. HRA Med. Assistance Program*, No. 10 Civ. 8191 (RPP), 2011 WL 1795235, at *4 (S.D.N.Y. May 6, 2011) (internal quotation marks and citation omitted).  "As the Second Circuit has repeatedly held, 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Bender v. City of New York*, No. 09 Civ. 3286 (BSJ), 2011 WL 4344203, at *1 (S.D.N.Y. Sept. 14, 2011) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).  Indeed, dismissal of a *pro se* complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations.  *See Walker v. Schult*, 717 F.3d 119, 124, 130 (2d Cir. 2013).  Put differently, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and alterations omitted).

**DISCUSSION**[2]

### 1. The *Rooker-Feldman* Doctrine

"The *Rooker–Feldman* doctrine provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment."

---

[2] There exist numerous reasons for dismissing Plaintiff's claims with prejudice beyond what is included herein.   The Court need not address them all.

*Botsas v. United States*, 5 F. App'x 69, 70 (2d Cir. 2001) (summary order) (citing *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)).  The doctrine is named after two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which together "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  The Second Circuit has identified four requirements that must be satisfied before the *Rooker-Feldman* doctrine applies: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Ashby v. Polinsky*, 328 F. App'x 20, 21 (2d Cir. 2009) (summary order) (internal quotation marks omitted) (citing *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007)).

By failing to file an opposition to the motions to dismiss, Plaintiff fails to deny that the elements of the doctrine are present here.  Nor could he.

The first requirement is clearly met because Plaintiff lost in the prior illegal lockout proceeding. *See Mezie Oduka v. Harlem Y.M.C.A et al.,* Index No. LT-1981/2024 (NY Civ. Ct., Aug 13, 2025).  The record reflects that, after a complete trial, the Court issued a written Decision and Order dismissing Plaintiff's claims with prejudice and holding that he was a licensee of Breaking Ground, had no cognizable possessory interest in the subject premises, and was therefore not entitled to be restored to possession.  (ECF No. 37 at 6)

9

The second requirement is also satisfied. "A plaintiff's injuries are 'caused by a state-court judgment' if the state-court judgment 'produced' the conduct of which the plaintiff complains." *Ward v. Bankers Tr. Co. of California*, No. 09 Civ. 1943 (RRM) (LB), 2011 WL 1322205, at *6 (E.D.N.Y. Mar. 29, 2011); *see also Ashby*, 328 F. App'x at 21; *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Here, Plaintiff's federal pleading seeks, among other relief, restoration to possession of the same premises that was the subject of the illegal-lockout proceeding. In that proceeding, as here, Plaintiff alleged that Harlem YMCA and Breaking Ground unlawfully excluded him from Room 828 and sought restoration to possession. Plaintiff's requested relief squarely seeks to undo the effect of the State Court determination that Plaintiff lacked the possessory entitlement he claimed. Plaintiff's federal claims therefore do not merely seek damages for conduct independent of the State Court proceeding. Rather, they challenge the legal consequences of the State Court's judgment – namely, that Plaintiff is not entitled to restoration to the subject premises. This conclusion is reinforced by the overlap between the State Court's findings and Plaintiff's allegations in this action. The State Court considered testimony concerning Plaintiff's absence from the premises between April and October 2024, the end of the contract between Breaking Ground and Harlem YMCA, the offer of alternative temporary housing, the condition of Plaintiff's room, the removal and storage of his belongings, and whether the door was locked or Plaintiff was otherwise prevented from accessing the room. Those same factual circumstances form the basis of Plaintiff's renewed allegations in this action. To the extent Plaintiff claims that those facts establish an illegal lockout or a present right to possession, the injury he alleges is inseparable from the State Court's adverse judgment. *See Rossman v. Stelzel,* No. 11 Civ. 4293 (JS) (ETB), 2011 WL

4916898, at *4 (E.D.N.Y. Oct. 13, 2011) ("[C]ourts within this Circuit routinely hold that a federal court action seeking to overturn a state court judgment of foreclosure or eviction is barred by the Rooker-Feldman doctrine.") (citing *Pharr v. Evergreen Garden, Inc.*, 123 Fed. App'x. 420, 423 (2d Cir. 2005)).

Third, for this Court to grant the relief requested, it would necessarily have to conclude that the State Court erred in determining that Plaintiff was not entitled to restoration.  In other words, Plaintiff is calling upon this Court to reject that judgment and restore his possession to the subject premises.  That is precisely what *Rooker-Feldman* forbids.  Recasting his allegations as discrimination, retaliation, harassment, denial of services, or violations of housing statutes does not move the needle as he is seeking the same remedy.  The doctrine applies where the federal claims, however styled, would require the district court to review and reject the State Court judgment.  *See Clarke-James v. Bank of New York Mellon,* No. 24 Civ. 1973 (LDH) (JRC), 2026 WL 879414, at *3 (E.D.N.Y. Mar. 31, 2026) (finding that despite Plaintiff's allegations that the federal complaint was "not about" what was adjudicated in the State Court action, because the plaintiff asked the Federal Court to "undo the State Court's judgment of foreclosure," the third requirement for Rooker-Feldman was satisfied).

The fourth requirement is also clearly met.  The State Court issued its Decision and Order on August 8, 2025, and the order was entered on August 13, 2025.  Plaintiff initiated this action on August 19, 2025 and amended his complaint, which advances possession-related claims, on October 15, 2025; both of which postdate the State Court judgment.  Therefore, insofar as Plaintiff is seeking to be "restor[ed] to the subject premises," his claims are barred by the doctrine and his claims should be dismissed in their entirety.

**2. Statute of Limitations**

While *Rooker-Feldman* provides sufficient grounds to dismiss all of Plaintiff's claims, in the event the Court finds that the doctrine does not apply, the applicable statutes of limitations provide an alternative avenue for dismissal. The Breaking Ground Defendants move to dismiss the Amended Complaint on the ground that all of Plaintiff's federal claims are time-barred and, absent a viable federal claim, the Court lacks any independent basis to exercise jurisdiction over Plaintiff's remaining state-law claims, including diversity jurisdiction and/or pendent jurisdiction. The Breaking Ground Defendants' motion applies with equal force to Plaintiff's claims against the Harlem YMCA Defendants.

Because timeliness is an affirmative defense, a plaintiff ordinarily need not allege in the complaint that the action was filed within the applicable limitations period. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal may be warranted, however, when an affirmative defense – such as failure to timely file – is apparent on the face of the complaint. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995); *Hogan v. Mahabir*, No. 22 Civ. 7858 (HG) (CLP), 2023 WL 3628554, at *5 (E.D.N.Y. May 24, 2023) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.") (quoting *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021)). That is precisely the case here. The Amended Complaint identifies the dates of the conduct on which Plaintiff's federal claims against Defendants are based, and those dates fall well outside the applicable limitations periods.

12

The Amended Complaint asserts violations of six discrete federal statutes: RICO, the ADA, the CRA, the FHA, Section 1983, and the Rehabilitation Act.  The statute of limitations is four years for civil claims brought under RICO.  *See Agency Holding Corp. v. Malley-Duff & Associates, Inc*., 483 U.S. 143 (1987) (explaining 18 U.S.C. § 1964(c) provides a private right of action for civil RICO claims and the four-year statute of limitations applicable to Clayton Act civil enforcement actions also applies to RICO civil enforcement actions).  The limitations period is three years for claims arising under the ADA.  *See Wilson v. Garcia*, 471 U.S. 261 (1985) (holding that while Title II of the ADA contains no express statute of limitations, where a federal civil rights statute lacks its own limitations period, courts should borrow the forum state's statute of limitations for the most analogous type of claim); *Goodman v. Lukens Steel Co*., 482 U.S. 656 (1987) (holding that discrimination claims are best characterized as personal injury actions, making the state personal injury limitations period the most natural analog); *Klein v. City of New York*, No. 10 Civ. 9568 (PAE) (JLC), 2011 WL 5248169, at *8 (S.D.N.Y. Oct. 28, 2011) (applying three year statute of limitations for certain civil rights claims based on New York personal injury statute), *report and recommendation adopted*, No. 10 Civ. 9568 (PAE) (JLC), 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012) (citing N.Y. C.P.L.R. § 214(5) and *Wallace v. Kato,* 549 U.S. 384, 387 (2007)).  The period is three years for claims that arise both under Title II and Title VI of the CRA. *See Klein,* 2011 WL 5248169, at *8 ("[C]laims under . . . Title VI . . .  must be brought within three years, pursuant to New York State's personal injury statute."); *Toliver v. City of New York*, No. 19 Civ. 11834 (CM), 2020 WL 883271, at *5 (S.D.N.Y. Feb. 21, 2020) (stating a limitations period of 3 years for claims brought under Title II of the CRA).  The limitations period is two years for claims brought under the FHA.  *See* 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person

13

may commence a civil action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last.")  The period is three years for claims under Section 1983.  *See Alexander v. Cuomo,* No. 24 Civ. 2179 (NCM) (ST), 2026 WL 124580, at *3 (E.D.N.Y. Jan. 16, 2026) (slip copy) ("Section 1983 actions filed in New York are subject to a three-year statute of limitations.") (citing *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013)). And claims under the Rehabilitation Act are subject to a three-year statute of limitations.  *Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 687 (S.D.N.Y. 2011) ("Rehabilitation Act Claims in New York are governed by New York's three-year statute of limitations governing personal injury actions, N.Y. C.P.L.R. § 214(5).") (citations omitted).

First, the Amended Complaint alleges that, in June or July 2016, approximately 9 years before the original complaint was filed in this action, Plaintiff gave Breaking Ground a letter from his doctor concerning the proximity of his residence to his mental-health treatment and that a Breaking Ground employee responded inappropriately when Plaintiff later asked whether the letter had been received.  (ECF No. 41 p. 4)  Plaintiff further alleges that, in March 2017, he complained to Breaking Ground and Harlem YMCA employees about "thick dust" and "asbestos filled air" allegedly caused by sprinkler installation at the subject premises, and that those employees failed to follow up.  (*Id.*)  Third, Plaintiff alleges that, from July to August 2019, he complained to Breaking Ground and Harlem YMCA employees that his air conditioner had been removed and not replaced, which he alleges affected his asthma, and that those employees again failed to follow up.  (*Id.* pp. 6-7)  Plaintiff began this action in October 2025.  Accordingly, those factual allegations among others are all untimely (by at minimum two years) under any of

14

the potentially applicable federal limitations period both for Breaking Ground and Harlem YMCA.

As to individual Defendants Sargeant and Herlihy, Plaintiff fails to articulate any actionable claim arising under federal law.  The only allegation as to Sargeant was that she "committed serious perjury and should be held in serious contempt for disrespecting the court, obstructing the administration of justice." (ECF No. 41-1 p. 9)  As Breaking Ground Defendants correctly note, this claim neither arises under Federal law, nor do "[a]llegations of perjury ... form the basis of a [state] civil action for damages." *Yalkowsky v. Shedler*, 94 A.D.2d 684, 684 (N.Y. 1983).  As to Herlihy, Plaintiff's sole allegation is that "Herlihy, Attorney for Defendants, admits to communications with Niesha Sergeant."  This allegation does not appear to indicate any wrongdoing that would amount to a violation of federal law.  As to Owen, De Jesus, and Foster, the claims against them are either untimely or unsupported by any timely actionable conduct.  Plaintiff's allegations regarding De Jesus principally concern events occurring between 2016 and 2019, including alleged complaints regarding sprinkler work and dust exposure in February and March 2017, alleged threats concerning recycling in 2016 through 2019, and the alleged removal of Plaintiff's air conditioner in June 2019. (ECF No. 41 pp. 3-7)  The only event Plaintiff raises regarding De Jesus that occurred within the limitation period was De Jesus's alleged refusal to allow Plaintiff to access his room in October 2024 – an issue already dismissed on the merits in the State Court proceeding.  With regard to Foster, Plaintiff alleges only that he was the "Director of 'subject premises'" and that, when asked to speak, he "continuously gives an excuse not to talk with you." (ECF No. 41 p. 8)  That allegation does not identify any timely discriminatory, retaliatory, or unconstitutional act, and to the extent Plaintiff seeks to hold

Foster liable for the same 2016-2019 events, those claims are untimely.  Finally, as to Owen, Plaintiff's allegations arise from her conduct as counsel during the 2024 State Court proceeding. He alleges that she "kept on talking about the case even after presiding Judge Eleanora Ofshtein numerous times told her to stop talking," yelled at or harassed him in the hallway, and selected a court date without consideration of Plaintiff's schedule. (ECF No. 41-1 pp. 8-9)  On the face of the pleading, it is unclear what federal claim, if any, he is asserting against her.

Without the existence of a viable claim arising under federal law, I further recommend that the Court find it lacks subject matter jurisdiction under 28 U.S.C. § 1332. "Diversity jurisdiction requires complete diversity: no plaintiff and no defendant may be citizens of the same state." *Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *1 (2d Cir. Jan. 26, 2023).  Under section 1332(a), a natural person's citizenship is determined by his domicile, demarcated as "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Agoliati*, 2023 WL 405769 at *1 (quotation marks omitted) (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d. Cir. 2000)).  Under section 1332(c)(1) a corporation is a citizen of every state in which it is incorporated, and where it has its "principal place of business." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Plaintiff's own allegations foreclose diversity jurisdiction.  He alleges that he is a resident of New York, and he further alleges that the two corporate defendants are incorporated in New York.  (ECF No. 41 p. 2)  Thus, on the face of the Amended Complaint, Plaintiff and at least two defendants share New York citizenship, thereby vitiating complete diversity.

With no basis for federal subject matter jurisdiction under Sections 1331 or 1332 remaining, I respectfully recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Waterman v. Transp. Workers' Union Loc*. 100, 8 F. Supp. 2d 363 (S.D.N.Y. 1998) ("[O]nce all claims over which the court had original jurisdiction have been dismissed, the underlying values of judicial economy, convenience, fairness and comity, will usually point towards dismissal of the supplemental claims."), *aff'd*, 176 F.3d 150 (2d Cir. 1999).

### 3. Failure to State a Claim

In the event that the Court finds that it can exercise subject matter jurisdiction over the claims and that Plaintiff's claims are not time-barred, Plaintiff also fails to state any claim upon which relief can be granted. Fed R. Civ. P. 12(b)(6).

Plaintiff invokes the CRA only in passing, without identifying the operative title, the allegedly protected characteristic at issue, or the specific discriminatory act attributable to any Defendant. Though it can be extrapolated that Plaintiff is asserting claims under either Title II or Title VI of the CRA, the Amended Complaint does not plead facts showing discrimination on any protected characteristic recognized under the CRA such as race, color, religion, or national origin. Without a baseline allegation purporting that he belonged to some protected class, no claim under the CRA can lie. *See Maron v. Legal Aid Society,* 605 F.Supp.3d 547, 557 (S.D.N.Y. 2022) (finding that it is "[a]n essential element of any claim under [the CRA] is that a plaintiff plead that she experienced some form of discrimination due to a protected characteristic."). Nor does the Amended Complaint plausibly allege that the subject premises constitutes a "place of public accommodation" within the meaning of Title II. *See Coward v. Town & Vill. of*

17

*Harrison,* 665 F.Supp.2d 281, 307 (S.D.N.Y. 2009) (explaining a plaintiff bringing a Title II claim "must allege facts which show that [he] was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent.")  Because Plaintiff fails to plead, at a minimum, that the subject premises was a covered public accommodation or that he is a member of a protected class, the CRA claims should be dismissed.

The ADA claim likewise fails.  Title II of the ADA prohibits discrimination against individuals with disabilities by state and local governments and requires their programs, services, and facilities to be accessible.  To plead a prima facie claim for discrimination under Title II, a plaintiff must allege that: (1) he or she is a qualified individual with a disability; (2) the defendant is a public entity covered by the ADA; and (3) the defendant excluded the plaintiff from participating in/denied the plaintiff the benefits of, a service, program, or activity, or otherwise discriminated against the plaintiff because of the plaintiff's disability.  *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  Though Plaintiff has adequately plead that he has asthma, which is conceivably a disability within the meaning of the ADA, *Hoeffner v. Cnty. of Orange*, No. 17 Civ. 9344 (VB), 2020 WL 1165851, at *6 (S.D.N.Y. Mar. 10, 2020) (on summary judgment finding that a reasonable juror could conclude plaintiff's asthma qualified as a disability under the ADA), Plaintiff does not plead facts suggesting that Breaking Ground or Harlem YMCA – which are nonprofit organizations – are public entities covered by the ADA, *see Ruffin v. Rockford Memorial Hosp.*, 181 Fed. Appx. 582, 584 (7th Cir. 2006) (finding that a hospital's status as an incorporated entity under state law did not render it a "public

entity" under Title II of the ADA), or that he was denied access to a program by virtue of his asthma.[3]

Plaintiff's Section 1983 claim also fails.  Section 1983 requires that a complaint "contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir. 1987).  The Amended Complaint asserts in conclusory fashion "No Due Process Fourteenth Amendment Constitutional Rights" and "No Due Process Fifth Amendment Constitutional Rights," (ECF No. 41 p. 1), but it does not identify any protected liberty or property interest that was deprived without due process, nor does it allege facts connecting any Defendant's conduct to a specific constitutional violation.  A threadbare reference to "due process" or "equal protection," without factual allegations showing what process was due, what process was denied, or how Plaintiff was treated differently because of a protected classification, is insufficient. *See Twombly,* 550 U.S. at 555 (A pleading that offers only "labels and conclusions" "will not do.").   In addition, the Section 1983 theory is undermined by the State Court findings.  (ECF No. 37)  The State Court determined, after trial, that Plaintiff failed to establish lawful occupancy for the requisite period before the alleged lockout, that Respondents did not lock him out but sought to transfer him to another short-term residence after the contractual arrangement ended, and that Plaintiff was a licensee of Breaking Ground.  Those findings defeat any plausible allegation that Plaintiff had a constitutionally protected possessory interest in the premises, and the Amended Complaint

---

[3] To the extent the claim is instead construed under Title I, Plaintiff ails to allege facts that he was employed by Defendant(s) and to the extent the claim is construed under Title III, Plaintiff again fails to plead that the residential/transitional housing at issue is a covered public accommodation.

otherwise identifies no separate constitutional deprivation.  At bottom, Plaintiff pleads only conclusory constitutional labels and no facts establishing the deprivation of a protected right.[4]

### 4. Leave to Amend

While a dismissal solely on the grounds of a finding of a lack of subject matter jurisdiction, in the normal course, must be "without prejudice" as a matter of law,  *Green v. Dep't of Educ. of New York*, 16 F.4th 1070, 1074 (2d Cir. 2021), granting Plaintiff leave to amend here would not be warranted because any further amendment would be futile. The *Rooker-Feldman* doctrine bars this Court from exercising jurisdiction over such claims.  Because that jurisdictional defect cannot be cured through repleading, amendment would be a nullity.  *See Herbert v. Delta Airlines*, No. 12 Civ. 1250 (SLT) (LB), 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) ("[C]ourts may deny leave to replead where amendment qualifies as futile.") (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Further, district courts ordinarily afford pro se plaintiffs an opportunity to amend a complaint to remedy pleading defects; however, leave to amend may be denied where, as here, the plaintiff has already had an opportunity to amend and failed to correct the deficiencies*.  See Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin,* 861 F.2d 40, 42 (2d Cir. 1988).  The Amended Complaint gives no indication that the defects can be cured with a further amendment.

---

[4] The same is true with regard to the remainder of Plaintiff's asserted federal claims. *See also Atuahene v. City of Hartford,* 10 F. Appx. 33, 34 (2d Cir. 2001) (holding that a plaintiff fails to state a claim when he "lump[ed] all the defendants together in each claim and provide[d] no factual basis to distinguish their conduct"). The claims advanced are so threadbare that they fail to satisfy Rule 8 – it is impossible to understand what each Defendant is actually alleged to have done. Indeed, all of the allegations are vague and conclusory. Accordingly, to the extent that Plaintiff asserts additional claims, they should be dismissed as they are devoid of facts that support a cognizable claim.  *See Salahuddin v. Cuomo*, 861 F2d 40, 42 (2d Cir. 1988) ("[T]he complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.")

Accordingly, I respectfully recommend that Plaintiff's claims be dismissed in their entirety with prejudice.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the Defendants' motions to dismiss be GRANTED.

Dated:        May 7, 2026
              New York, New York

Respectfully submitted,

_____

KATHARINE H. PARKER
United States Magistrate Judge

21

**NOTICE**

**Plaintiff shall have seventeen days and Defendants shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P. 72(b)(2). If any party files written objections to this Report and Recommendation, the plaintiff shall have seventeen days to serve and file a response and Defendants shall have fourteen days to serve and file a response. Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985)**